UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL JORDAN,<br><br>    Plaintiff,<br><br>  v.<br><br>DEBBIE ASUNCION, et al.,<br><br>    Defendants. | Case No. CV 17-1283 PSG (SS)<br><br>**MEMORANDUM DECISION AND ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND** |

**I.**

**INTRODUCTION**

Pending before the Court is Plaintiff's First Amended Complaint, filed pursuant to 42 U.S.C. § 1983.[1] ("FAC," Dkt. No. 6). Congress mandates that district courts perform an initial screening of complaints in civil actions where a prisoner seeks redress from a governmental entity or employee. 28 U.S.C. § 1915A(a). This Court may dismiss such a complaint, or any portion thereof, before service of process if the complaint (1) is

---

[1] This matter was assigned to the undersigned Magistrate Judge on April 25, 2018.

frivolous or malicious, (2) fails to state a claim upon which relief can be granted, or (3) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1-2); see also Lopez v. Smith, 203 F.3d 1122, 1126-27 & n.7 (9th Cir. 2000) (en banc). For the reasons stated below, the First Amended Complaint is DISMISSED with leave to amend.[2]

## II.
## ALLEGATIONS OF THE COMPLAINT

Plaintiff sues two employees of California State Prison-Los Angeles County ("CSP-LAC"): (1) physician Dr. J. Marcelo, and (2) Warden Debbie Asuncion. Both Defendants are sued in both their individual and official capacities. (FAC at 3).[3]

The FAC alleges that on May 21, 2015, Plaintiff suffered a back injury that caused him to collapse. (Id. at 8). Plaintiff was taken to the prison medical clinic, where he informed

---

[2] A magistrate judge may dismiss a complaint with leave to amend without the approval of a district judge. See McKeever v. Block, 932 F.2d 795, 798 (9th Cir. 1991) ("[T]he dismissal of a complaint with leave to amend is a non-dispositive matter."). Consistent with McKeever, the Court concludes that its Order Dismissing First Amended Complaint with Leave to Amend is a non-dispositive Order. However, pursuant to Federal Rule of Civil Procedure 72, if Plaintiff disagrees, he may file an objection with the District Judge. See Bastidas v. Chappell, 791 F.3d 1155, 1162 (9th Cir. 2015); see also Hunt v. Pliler, 384 F.3d 1118, 1124 (9th Cir. 2004) ("'District court review of even these nondispositive matters . . . can be compelled upon objection of the party against whom the magistrate has ruled.'") (quoting McKeever, 932 F.2d at 798).

[3] The Court will cite to the FAC and its attached exhibits as though they were consecutively paginated.

2

Dr. Marcelo that his "back gave out and he was in a lot of pain." (Id.). Dr. Marcelo did not believe Plaintiff and told him to "get ready for a rectum exam." (Id.). Plaintiff asked, "What does a rectum exam have to do with my back?" (Id.). Dr. Marcello told Plaintiff that the procedure he was "about to do would tell [him] all [he] need[ed] to know." (Id.). Dr. Marcello then placed his fingers in Plaintiff's rectum, which Plaintiff claims constituted sexual assault. (Id.).

Plaintiff was not told of any alternatives to the rectal exam, and no such procedures were performed. (Id. at 16). For example, Plaintiff was not given an x-ray, and he "was not advised of a digital rectum exam as an alternate option to Marcelo['s] sexual assault with his fingers and the doctor did not offer the digital exam [sic]."[4] (Id.).

As a lasting consequence of this "assault," Plaintiff claims that whenever he is around medical personnel, his heart starts to beat very fast and he sweats "profusely," which often trigger breathing difficulties and severe back pain. (Id. at 9-10). These physical injuries make Plaintiff become "extremely anxious," and he experiences "abnormal" feelings of anger towards health care providers and depression. (Id.).

---

[4] It is possible that Plaintiff is unclear as to the meaning of "digital rectal exam." "A digital rectal examination (DRE) is a simple procedure doctors use to examine the lower rectum and other internal organs. . . . To perform a DRE, your doctor will gently insert a gloved, lubricated finger into your anus. This allows them to feel for any abnormalities." (See https://www.healthline.com/health/digital-rectal-exam#uses).

3

Plaintiff filed a grievance in which he complained of the sexual assault. (Id. at 18). However, to avoid having to address the assault, prison officials denied the 602 and refused to return it to Plaintiff, thereby depriving him of the ability to prove that he had raised the issue in his first-level grievance.[5] Plaintiff's third level appeal was wrongfully denied on the false ground that Plaintiff raised the sexual assault issue for the first time at the Director's Level of Review and failed to provide evidence that he had attempted to address it at the lower level. (Id. at 18 & Exh. A at 21).

Plaintiff states that Warden Asuncion took no action against prison employees who purposely attempted to obstruct his right to file a grievance. (Id. at 11). According to Plaintiff, "[t]he routine illegal Screening out of plaintiff's 602 to avoid addressing the complaint and allowing plaintiff to stipulate [to] [sic] clearly determined facts is the moving force behind the violation of the First Amendment." (Id. at 18). Plaintiff contends that Warden Asuncion "is responsible for the First Amendment violation . . . [because] employee's [sic] of CDCR under her supervision made false claims and withheld Plaintiff's original

---

[5] "When a prisoner files an administrative appeal concerning an action by the CDCR, typically the appeal is filed using a '602' form." Pride v. Correa, 719 F.3d 1130, 1136 n.9 (9th Cir. 2013); see also Cal. Code Regs. tit. 15, § 3084.2. "Administrative remedies are not deemed exhausted until the appeal proceeds to a third level review, and administrative remedies are not deemed exhausted as to any new issue, information or person not included in the originally submitted . . . 602 form." Parthemore v. Col, 221 Cal. App. 4th 1372, 1380 (2013) (citing Cal. Code Regs., tit. 15, § 3084.1(b)).

4

complaint of sexual abuse in order to not grant the 602 or address the claim as a properly filed First Amendment right." (Id. at 17).

Plaintiff raises claims for violations of his First, Eighth and Fourteenth Amendment rights and for the state law tort of negligence. (Id. at 5). He requests one million dollars in damages from each Defendant. (Id. at 19).

## III.

## DISCUSSION

Under 28 U.S.C. § 1915A(b), the Court must dismiss the FAC due to pleading defects. However, the Court must grant a pro se litigant leave to amend his defective complaint unless "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012) (citation and internal quotation marks omitted). For the reasons discussed below, it is not "absolutely clear" that at least some of the defects of Plaintiff's FAC could not be cured by amendment. The FAC is therefore DISMISSED with leave to amend.

**A.   The FAC Fails To State A Fourteenth Amendment Claim**

Plaintiff broadly alleges that his Fourteenth Amendment rights were violated. However, he does not clearly state whether he is bringing a Fourteenth Amendment claim against Dr. Marcelo, Warden Asuncion, or both, or what the basis of his Fourteenth Amendment claim might be. However, any purported Fourteenth Amendment claim

involving either the rectal examination or the processing of Plaintiff's grievance fails to state a claim.

**1. Rectal Examination**

Except in unusual circumstances, a prisoner generally has a constitutional right to refuse unwanted medical care. See Cruzan by Cruzan v. Director, Missouri Dept. of Health, 497 U.S. 261, 278 (1990) ("The principle that a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment may be inferred from our prior decisions."); Benson v. Terhune, 304 F.3d 874, 884 (9th Cir. 2002) ("The due process clause of the Fourteenth Amendment substantively protects a person's rights to be free from unjustified intrusions to the body, to refuse unwanted medical treatment and to receive sufficient information to exercise these rights intelligently.") (internal citations omitted); Runnels v. Rosendale, 499 F.2d 733, 735 (9th Cir. 1974) ("Allegations that prison medical personnel performed major surgical procedures upon the body of an inmate, without his consent and over his known objections, that were not required to preserve his life or further a compelling interest of imprisonment or prison security, may [be sufficient to state a cognizable Fourteenth Amendment due process claim]."). Nonetheless, exceptions to this rule may apply for life and death situations or for medical conditions that could impact the health and well-being of other prisoners or prison staff. See, e.g., Washington v. Harper, 494 U.S. 210, 222, 226 (1990).

Here, Plaintiff fails to state a Fourteenth Amendment claim with respect to his rectal examination because he does not allege any facts showing that he ever communicated to Dr. Marcelo or any other health care provider that he did not want to submit to the procedure. The FAC alleges that Plaintiff asked Dr. Marcelo about the purpose of the examination and its connection to his complaint of back pain, but nothing more. Accordingly, the FAC must be dismissed, with leave to amend.

### 2. Grievance Processing

Plaintiff appears to allege that his constitutional rights were violated because his form 602 was denied and not returned to him, thus depriving him of the ability to challenge the denial of his claim at the Director's Level on the ground that he had not raised his assault claim in the 602.

Although a prisoner must "exhaust his administrative remedies before filing a lawsuit concerning prison conditions," Sapp v. Kimbrell, 623 F.3d 813, 821 (9th Cir. 2010) (citing 42 U.S.C. § 1997e(a)), prison grievance procedures do not create substantive rights enforceable under the Due Process Clause. See Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996) ("[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."). A prisoner does not have a constitutional right to any particular grievance procedure. See Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) ("[I]nmates lack a separate constitutional entitlement to a specific prison

grievance procedure.") (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)).  Nor does a prisoner have a constitutional right to any particular grievance outcome.  See Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005) (an inmate "does not have a federally protected liberty interest in having . . . grievances resolved to his satisfaction"); Grenning v. Klemme, 34 F. Supp. 3d 1144, 1157 (E.D. Wash. 2014) ("[A plaintiff] cannot state a constitutional claim based on his dissatisfaction with the grievance process.  Where the defendant's only involvement in the allegedly unconstitutional conduct is 'the denial of administrative grievances or the failure to act, the defendant cannot be liable under § 1983.'") (quoting Shehee v. Luttrell, 1999 F.3d 295, 300 (6th Cir. 1999)).  Moreover, a prison official's failure to process a grievance, without more, is insufficient to establish liability under section 1983.  See Buckey v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993).

Improper screening of a grievance or other irregularities in the grievance's processing, whether "innocent or otherwise," may provide a ground for excusing a prisoner from the Prison Litigation Reform Act's exhaustion requirement.  Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010).  However, as a general matter, these improprieties will not provide the basis for a due process claim.  Accordingly, the FAC must be dismissed, with leave to amend.

**B.   The FAC Fails To Allege A First Amendment Claim**

As a rule, "prisoners have a First Amendment right to file prison grievances." Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009); Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005). "Retaliation against prisoners for their exercise of this right is itself a constitutional violation, and prohibited as a matter of 'clearly established law.'" Brodheim, 584 F.3d at 1269 (citing Rhodes, 408 F.3d at 567).

There are five basic elements for a viable claim of First Amendment retaliation in the prison context:

> (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

Brodheim, 584 F.3d at 1269 (quoting Rhodes, 408 F.3d at 567-68). The prisoner must establish a specific link between the alleged retaliation and the exercise of a constitutional right. See Pratt v. Rowland, 65 F.3d 802, 807-08 (9th Cir. 1995). Even just "'a threat of retaliation is sufficient injury if made in retaliation for an inmate's use of prison grievance procedures.'" Brodheim, 584 F.3d at 1270 (quoting Burgess v. Moore, 39 F.3d 216, 218 (8th Cir. 1994)).

Plaintiff fails to state a First Amendment claim because the FAC does not allege that prison officials took or even threatened to take any adverse action against him for having filed grievances and appeals. The fact that Plaintiff's grievance was denied does not establish a First Amendment retaliation claim. Compare Entler v. Gregoire, 872 F.3d 1031, 1036, 1038 (9th Cir. 2017) (allegation that inmate was disciplined for threatening to file lawsuits, resulting in "fifteen days of lost 'big yard' and gym time" and "five more days of cell confinement," adequately stated First Amendment retaliation claim); Klein v. Williams, 714 F. App'x 631, 635 (9th Cir. 2017) (allegation that prison official threatened to fire inmate from his job for filing a grievance adequately stated a First Amendment claim). Accordingly, the FAC must be dismissed, with leave to amend.

**C.  The FAC Fails To State A Negligence Claim**

Plaintiff alleges that Dr. Marcelo was negligent because he had a duty to use due care in dealing with his patients, which he breached by inserting his fingers into Plaintiff's rectum after Plaintiff had complained of back pain. (See FAC at 9). Plaintiff alleges that Warden Asuncion was negligent because she had a duty to ensure that her employees would not conspire to violate Plaintiff's First Amendment rights, which she breached by failing to punish the employees who violated Plaintiff's rights. (Id. at 11). Negligence is a state law cause of action in tort. Apart from any substantive defects in Plaintiff's negligence claims, the

FAC does not satisfy the procedural requirements for alleging state law tort claims against governmental actors.

Under the California Government Claims Act ("CGCA"), a plaintiff may not bring an action for damages against a public employee or entity unless he first presents a written claim to the government within six months of the incident. See Mabe v. San Bernadino Cnty., Dept. of Public Social Servs., 237 F.3d 1101, 1111 (9th Cir. 2001) (CGCA requires the "timely presentation of a written claim and the rejection of the claim in whole or in part" before a plaintiff can file suit); see also Cal. Gov't Code § 945.4 (no suit for money damages may be brought against a public entity until a written claim is presented to the public entity, and is acted upon or rejected by the board). "The failure to exhaust an administrative remedy [under the CGCA] is a jurisdictional, not a procedural, defect." Miller v. United Airlines, Inc., 174 Cal. App. 3d 878, 890 (1985); see also Cornejo v. Lightbourne, 220 Cal. App. 4th 932, 938 (2013) ("Ordinarily, filing a claim with a public entity pursuant to the Claims Act is a jurisdictional element of any cause of action for damages against the public entity . . .").

The CGCA's claim presentation requirement is separate from, and is not satisfied by, internal prison grievance processes. See Hendon v. Ramsey, 528 F. Supp. 2d 1058, 1069-70 (S.D. Cal. 2007) ("Although Plaintiff has demonstrated successfully that he utilized the prison grievance process to exhaust his federal claims by filing an inmate appeal, and has attached documentation in the form of his CDC 602 form and administrative responses, these documents

11

do not satisfy the [California Government Claims Act] with respect to his state law negligence claims."). Instead, "[a] claim under the Government Claims Act must be presented to the California Victim Compensation and Government Claims Board for all claims for money or damages made against the state." In re Jones, 2014 WL 813063, at *5 (Cal. Ct. App. Mar. 3, 2014) (citing Cal. Gov't. Code, § 905.2(a), (b)); Smith v. Cobb, 2018 WL 1141507, at *4 (S.D. Cal. Mar. 2, 2018) (state prisoner tort claims under the CGCA "must be made to the Victim Compensation and Government Claims Board"); Apollo v. Gyaami, 167 Cal. App. 4th 1468, 1473 (2008) (referring to state prisoner's proper presentation of tort claim to California Victim Compensation and Government Claims Board).

Furthermore, a plaintiff must affirmatively allege in the complaint compliance with the CGCA's claims presentation requirement, or explain why compliance should be excused. Mangold v. Cal. Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995). Plaintiff does not allege compliance with the claims presentation requirement of the CGCA, or facts warranting excusal from that requirement, and therefore fails to state a negligence claim against either Defendant. Accordingly, the FAC must be dismissed, with leave to amend.

\\
\\

1 | **D.  The FAC Fails To Allege A Claim For Supervisory Liability Against Warden Asuncion**

To demonstrate a civil rights violation, a plaintiff must show either direct, personal participation, or some sufficient causal connection between the official's conduct and the alleged constitutional violation. See Starr v. Baca, 652 F.3d 1202, 1205-06 (9th Cir. 2011).  Government officials are not liable under section 1983 simply because their subordinates engaged in unconstitutional conduct.  See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).  Where a plaintiff sues a supervisor but does not allege that the supervisor *directly* participated in the constitutional violation, a "sufficient causal connection" to the violation may be shown where the supervisor "set 'in motion a series of acts by others, or knowingly refused to terminate [such acts], which he knew or reasonably should have known, would cause others to inflict the constitutional injury.'" Levine v. City of Alameda, 525 F.3d 903, 907 (9th Cir. 2008) (quoting Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991)); see also Preschooler II v. Clark County Bd. of Trustees, 479 F.3d 1175, 1183 (9th Cir. 2007) (a supervisor may be held accountable only "for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others").

\\

\\

Here, Plaintiff simply alleges that Warden Asuncion is liable for the alleged mishandling of Plaintiff's grievances because she is "[r]esponsible for [the] operation of prison employees and w[e]lfare of inmates of the prison." (FAC at 3). This is an insufficient basis to show supervisory liability under § 1983. Accordingly, the FAC must be dismissed, with leave to amend.

**E.  The FAC Fails To State A Claim Against Defendants In Their Official Capacity**

Plaintiff sues Defendants for damages in both their official and individual capacities. (Id.). State employees sued in their individual capacity may be liable for money damages. Hafer v. Melo, 502 U.S. 21, 27 (1991). However, Plaintiff's official-capacity claims are barred by the Eleventh Amendment and cannot proceed to the extent Plaintiff seeks only money damages.

Pursuant to the Eleventh Amendment, a state and its official arms are immune from suit under section 1983. Howlett v. Rose, 496 U.S. 356, 365 (1990); Brown v. Cal. Dept. of Corrections, 554 F.3d 747, 752 (9th Cir. 2009) ("California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court"). "[A] suit against a state official in his or her official capacity . . . is no different from a suit against the State itself." Flint v. Dennison, 488 F.3d 816, 824-25 (9th Cir. 2007) (citation omitted). Therefore, state officials sued in their official capacity under § 1983 are generally entitled to immunity. Id. at 825. However, state officials sued in their

official capacity are considered "person[s]" when they are sued for prospective injunctive relief under section 1983, and the Eleventh Amendment does not bar such claims. Id. (citing Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985)).

To the extent that Defendants, both of whom are state employees, are sued for damages in their official capacity, this action is functionally a suit against the State of California. Plaintiff does not seek prospective injunctive relief that might warrant an exception to the Eleventh Amendment bar. Accordingly, Plaintiff's claims for money damages against Defendants in their official capacity are barred by the Eleventh Amendment and must be dismissed.

**F.   The FAC Violates Federal Rule of Civil Procedure 8**

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)). Rule 8 may be violated when a pleading "says too little," and "when a pleading says too much." Knapp v. Hogan, 738 F.3d 1106, 1108 (9th Cir. 2013) (emphasis in original).

Here, the FAC violates Rule 8 because Plaintiff does not clearly identify the nature of each of the legal claims he is

15

bringing, the specific facts giving rise to each claim, or the specific Defendant or Defendants against whom each claim is brought. Without more specific information, Defendants cannot respond to the FAC. See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1058 (9th Cir. 2011) (a complaint violates Rule 8 if a defendant would have difficulty understanding and responding to the complaint). Moreover, because Plaintiff is not required to provide evidence supporting his claims at this stage of the litigation, the exhibits attached to the FAC appear unnecessary. Finally, it appears that the FAC consists of a largely verbatim copy of the original Complaint's claims and allegations against Dr. Marcelo and Warden Asuncion, which the Court found defective, followed by a new section entitled "additional facts." (FAC at 14-16). However, merely pleading "additional facts" on top of defective allegations did not and could not correct the underlying deficiencies in the claims as originally pled. Plaintiff is cautioned that any future amended complaint must not repeat the allegations of either the original or First Amended Complaint that the Court explained were defective. Accordingly, the FAC is dismissed, with leave to amend.

**IV.**

**CONCLUSION**

For the reasons stated above, the FAC is dismissed with leave to amend. If Plaintiff still wishes to pursue this action, he is granted **thirty (30) days** from the date of this Memorandum and Order within which to file a Second Amended Complaint. In any amended

16

complaint, the Plaintiff shall cure the defects described above. **Plaintiff shall not include new defendants or new allegations that are not reasonably related to the claims asserted in the original complaint.** The Second Amended Complaint, if any, shall be complete in itself and shall bear both the designation "Second Amended Complaint" and the case number assigned to this action. It shall not refer in any manner to any previously filed complaint in this matter.

In any amended complaint, Plaintiff should confine his allegations to those operative facts supporting each of his claims. Plaintiff is advised that pursuant to Federal Rule of Civil Procedure 8(a), all that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief." **Plaintiff is strongly encouraged to utilize the standard civil rights complaint form when filing any amended complaint, <u>a copy of which is attached.</u>** In any amended complaint, Plaintiff should identify the nature of each separate legal claim and make clear what specific factual allegations support each of his separate claims, and the specific individual or individuals against whom each claim is brought. Plaintiff is strongly encouraged to keep his statements concise and to omit irrelevant details. **<u>It is not necessary for Plaintiff to cite case law, include legal argument, or attach exhibits at this stage of the litigation</u>. Plaintiff is also advised to omit any claims for which he lacks a sufficient factual basis.**
\\
\\

**Plaintiff is explicitly cautioned that the failure to timely file a Second Amended Complaint, or the failure to correct the deficiencies described above, will result in a recommendation that this action be dismissed with prejudice for failure to prosecute and obey court orders pursuant to Federal Rule of Civil Procedure 41(b). <u>Plaintiff is further advised that if he no longer wishes to pursue this action, he may voluntarily dismiss it by filing a Notice of Dismissal in accordance with Federal Rule of Civil Procedure 41(a)(1). A form Notice of Dismissal is attached for Plaintiff's convenience.</u>**

DATED: May 7, 2018

                                                  /S/
                                      SUZANNE H. SEGAL
                                      UNITED STATES MAGISTRATE JUDGE

**<u>NOTICE</u>**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number. No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.